IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No: 21-cr-585 (CRC) |
| | 18 U.S.C. § 1752(a)(2) |
| v. | |
| JAMES DOUGLAS RAHM, III, | |
| Defendant. | |

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, James Douglas Rahm, III, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

1

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol,

including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Rahm, III's Participation in the January 6, 2021, Capitol Riot*

8. Rahm, III travelled to Washington, D.C. from his home in Atlantic City, New Jersey with his father, James Douglas Rahm, Jr., to attend the rally for then-President Trump at the Ellipse. On January 6, 2021, Rahm, III and Rahm, Jr. walked to the Capitol because they knew a rally would take place there. At the Capitol, the pair separated.

9. Just prior to entering the Capitol, Rahm, III was recorded saying, "Holy shit, holy shit. Oh, my fucking God. We just stormed the Capitol. Holy Fuck." Rahm, III entered the Capitol to film the riot with a Go-Pro camera but knew that his presence in the Capitol would impede or disrupt the orderly conduct of Congress and assist others with that intent in doing so.

Rahm, III briefly entered the office suite belonging to Speaker of the House Nancy Pelosi. At approximately 2:38 pm, Rahm, III was part of a group in the East Rotunda Lobby. At the time, there were three police officers standing between the group in the East Rotunda Lobby and the East Rotunda Doors, keeping them closed as rioters attempted to open the doors from the inside to allow additional rioters into the Capitol. Rahm, III was part of a group that pushed the police officers into the doors, causing the doors to open, allowing additional rioters into the Capitol.

10. Thereafter, Rahm, III remained in the Rotunda until police cleared it. Rahm, III exited the Capitol through the East Rotunda Doors at approximately 3:20 p.m.

## *Elements of the Offense*

11. The parties agree that 18 U.S.C. §1752(a)(2) requires the following elements:
    a. First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds;
    b. Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions; and
    c. Third, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

## *Defendant's Acknowledgements*

12. Rahm, III willfully and knowingly entered the U.S. Capitol Building, knowing that he did not have permission to do so and that it was a restricted building. Rahm, III acknowledges that he knew by entering the Capitol, his conduct would impede or disrupt the orderly conduct of Government business or official functions and Rahm, III further

acknowledges that his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     /s/ *Douglas G. Collyer*
Douglas G. Collyer
Assistant United States Attorney

## DEFENDANT'S ACKNOWLEDGMENT

I, James Douglas Rahm, III, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 8-24-23

James Douglas Rahm, III
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 8-28-23

Heather Shaner, Esq.
Attorney for Defendant